UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONSTANTINO SANCHEZ-RODRIGUEZ, JOSÉ ALBERTO AGUILERA-HERNANDEZ, ULISES EDGARDO CRUZ-GONZALEZ, ESMITH GONZALEZ-RODRIGUEZ, VALENTIN ALVARADO-HERNANDEZ, DANIEL RODRIGUEZ-GARCIA, and ESDRAS SAHI MENDIOLA-BORDES, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | SECOND AMENDED COMPLAINT |
| v. | ) ) ) | CLASS ACTION |
| JACKSONS FARMING COMPANY OF AUTRY-VILLE a/k/a JACKSON'S FARMING COMPANY OF AUTRYVILLE, WILLIAM BRENT JACKSON, and WILLIAM RODNEY JACKSON, | ) ) ) ) | Civil Action No.: 7:16-cv-00028-D |
| Defendants. | ) ) ) ) | |

I.    PRELIMINARY STATEMENT

1.    Plaintiffs Constantino Sanchez Rodriguez, José Alberto Aguilera-Hernandez, Ulises Edgardo Cruz Gonzalez, Esmith Gonzalez Rodriguez, Valentin Alvarado Hernandez, Daniel Rodriguez Garcia, and Esdras Sahi Mendiola Bordes ("Plaintiffs") are migrant agricultural workers recruited by defendants' authorized agents in Mexico in 2015 to work on defendants' farm under the H-2A guestworker program in and around Sampson County, North Carolina. Plaintiffs file this action as a collective action under 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), and as a class action under the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. §§ 95-25.1 et seq., and the common law of contracts of North Carolina.

2. Excluding named plaintiffs José Alberto Aguilera-Hernandez and Esdras Sahi Mendiola Bordes, defendants violated the FLSA and, for all named plaintiffs, the NCWHA by failing to pay those employees and the members of the collective action and the class that those employees seek to represent at least the required minimum hourly wage and the promised adverse effect wage rate ("AEWR") that the defendants disclosed to those employees when that wage was due under the NCWHA for every hour they worked in the first workweek that the Defendants employed those employees by failing to fully reimburse all of the employees for their pre-employment expenses as required by law.

3. Defendants also violated the FLSA and/or the NCWHA by failing to pay the Plaintiffs and the members of the collective action and the class that the Plaintiffs seeks to represent (collectively "Workers") at least the required minimum hourly wage and/or the AEWR that the defendants disclosed to the Workers when that wage was due under the NCWHA for every hour they worked in workweeks other than the first workweek that the Defendants employed the Workers by failing to pay wages to some of those Workers for hours worked on a piece rate basis by those same Workers that resulted in average hourly earnings during the pay period that were at least equal to the amount those same Workers would have earned had those Workers been paid at the FLSA minimum rate and/or the AEWR hourly rate, and/or by failing to pay those Workers for travel time required to those Workers from one field to another during the workday when that travel was all in a day's work.

4. Defendants also breached their employment contracts with the Workers by failing to fully reimburse the named plaintiffs for all of their pre-employment expenses as required by law pursuant to 20 C.F.R. §§ 655.122(h)(1) and 655.122(p) for every hour

worked that the named plaintiffs performed in the first workweek that the Defendants employed them by failing to fully reimburse all of them for their pre-employment expenses as required by law.

5.     This complaint is also based upon the defendants' discrimination and retaliation in violation of 29 U.S.C. § 215(a)(3) and N.C.Gen.Stat. § 95-241(a) against:

(a)     plaintiff Aguilera-Hernandez on October 27, 2015 by discharging him on that date because the plaintiff raised a complaint with the defendants about their expressed intent to make wage deductions in an amount that would reduce his hourly wage below the minimum rate required by the FLSA and N.C.Gen.Stat. § 95-25.8(b)(1),

(b)     against all plaintiffs by refusing to re-hire them to work for the defendants in the 2016 agricultural season and thereafter with an H-2A Visa because all plaintiffs raised a complaint that the defendants did not pay them all promised wages when due at the minimum rate required by the FSLA and N.C.Gen.Stat. §§ 95-25.6 and 95-25.13(1)-(2), and

(c)     against plaintiff Mendiola-Bordes by the defendants' refusal to renew in December and January, 2015 and in December and January, 2016 their membership in The North Carolina Grower's Association, Inc. ("NCGA") and their collective bargaining agreement ("CBA") with the Farm Labor Organizing Committee, AFL-CIO ("FLOC") that the defendants had in 2014 and many years before 2014 because plaintiff Mendiola-Bordes and other employees of the defendants, acting through and with the assistance of FLOC, filed and successfully settled a grievance that the defendants did not pay them all promised wages when due at the minimum rate required by the FSLA and N.C.Gen.Stat. §§ 95-25.6 and 95-25.13(1)-(2) for the work they performed for the defendants in the 2014 agricultural season.  Plaintiffs seek their unpaid wages and liquidated damages under 29 U.S.C. § 216(b)

and the NCWHA, and Plaintiffs seek actual, incidental, consequential, and compensatory damages, pre- and post-judgment interest, and declaratory relief as alleged.

II.     JURISDICTION

6.     Jurisdiction is conferred upon this Court over all defendants named in this action pursuant to 28 U.S.C. §§1331 and 1337, 29 U.S.C. § 216(b), and 28 U.S.C. §1367(a).

7.     This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

III.    VENUE

8.     Venue over this action lies in this Court pursuant to 28 U.S.C. §§1391(b)(2), and 29 U.S.C. §216(b).  From on or about June 11, 2015 through on or about December 12, 2015, the defendants jointly and/or severally employed the named plaintiffs and the employees they seek to represent in one or more of the counties specified in 28 U.S.C. § 113(a) for both the first pay periods that the named plaintiffs and those same co-workers were employed to perform any work at any time in those same workweeks, and for at least ten (10) additional pay periods.  From on or about June 11, 2014 through on or about December 12, 2014, the defendants jointly and/or severally employed named plaintiff Esadras Sahi Mendiola-Bordes in one or more of the counties specified in 28 U.S.C. § 113(a) for both the first pay periods that the named plaintiffs and those same co-workers were employed to perform any work at any time in those same workweeks, and for at least ten (10) additional pay periods.  Therefore, a substantial part of the events or omissions giving rise to the claims of the named plaintiffs and the employees they seek to represent occurred in one or more counties located in one or more counties located within the jurisdiction of the U.S. District Court for the Eastern District of North Carolina.

9.     Venue over this action also lies in this Court pursuant to 28 U.S.C. §§1391(b)(1), and 29 U.S.C. §216(b). On the date on which this action was filed and in all of 2015 and 2016 to date, the principal place of business and residence of the defendants were and are located in Sampson County, North Carolina.

IV.     <u>NAMED PLAINTIFFS</u>

10.     With the exception of plaintiff José Alberto Aguilera-Hernandez, in the time period from on or about June 11, 2015 through on or about December 12, 2015, the Plaintiffs José Alberto Aguilera-Hernandez, Ulises Edgardo Cruz Gonzalez, Constantino Sanchez Rodriguez, Esmith Gonzalez Rodriguez, Valentin Alvarado Hernandez, Daniel Rodriguez Garcia, and Esdras Sahi Mendiola Bordes were jointly and severally employed (as the term "employ" is defined by N.C. Gen. Stat. § 95-25.2(3) and 29 U.S.C. § 203(g)) to perform various forms of seasonal agricultural work by one or more of the individual defendants, and defendant Jacksons Farming Company of Autryville (hereinafter referred to as "Farming Company") as part of the agricultural enterprise operated by defendant Farming Company in or near Autryville, Sampson County, North Carolina as migrant employees, and were housed in one or more farm labor camps by one or more of the defendants in and around Sampson County, North Carolina during that same time period.

10A.    In the time period from on or about June 11, 2014 through on or about December 12, 2014, Plaintiff Esdras Sahi Mendiola Bordes and more than 60 other workers with an H-2A visa were jointly and severally employed (as the term "employ" is defined by N.C. Gen. Stat. § 95-25.2(3) and 29 U.S.C. § 203(g)) to perform various forms of seasonal agricultural work by one or more of the individual defendants, and defendant Jacksons Farming Company of Autryville (hereinafter referred to as "Farming

5

Company") as part of the agricultural enterprise operated by defendant Farming Company in or near Autryville, Sampson County, North Carolina as migrant employees, and were housed in one or more farm labor camps by one or more of the defendants in and around Sampson County, North Carolina during that same time period.

11.     From in or about June 11, 2015 through on or about October 27, 2015, plaintiff José Alberto Aguilera-Hernandez was also jointly and severally employed (as the term "employ" is defined by N.C. Gen. Stat. § 95-25.2(3) and 29 U.S.C. § 203(g)) to perform various forms of seasonal agricultural work by one or more of the individual defendants, and defendant Jacksons Farming Company of Autryville (hereinafter referred to as "Farming Company") as part of the agricultural enterprise operated by defendant Farming Company in or near Autryville, Sampson County, North Carolina as a migrant employee, and was also housed in one or more farm labor camps by one or more of the defendants in and around Sampson County, North Carolina during that same time period.

12.     In order to obtain their employment in 2014 and/or 2015 with one or more of the defendants, the Plaintiffs, the class alleged in ¶29 below, and the members of the collective action alleged in ¶¶23-24 below that the Plaintiffs seek to represent were jointly and severally recruited in Mexico and transported directly from Mexico to North Carolina by or at the direction of or by arrangements made by one or more authorized agents of the defendants to begin that same employment.

13.     At all times relevant to this complaint, the Plaintiffs were H-2A agricultural guestworkers admitted into the United States to work for one or more of the defendants pursuant to the authority of the H-2A program codified at 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A), 1184(c), and 1188(a)(1).

V.    <u>DEFENDANTS</u>

14.    At all times on and after January 1, 2006 that are relevant to this action, defendant Jacksons Farming Company of Autryville a/k/a Jackson's Farming Company of Autryville (hereinafter "Farming Company") was and is a closely-held corporation in good standing duly formed on September 14, 1981 under and in accordance with the laws of the State of North Carolina.  At all times relevant to this Complaint, defendant William Brent Jackson is and has been at the President of defendant Farming Company, and defendant William Rodney Jackson is and has been the Vice-President of defendant Farming Company, 2905 Ernest Williams Road, Autryville, North Carolina 28318-7967.

15.    Upon information and belief, at all times relevant to this action after January 1, 2014, defendants William Brent Jackson (hereinafter referred to as "Brent") and his son, defendant William Rodney Jackson (hereinafter referred to as "Rodney"), were and are the sole owner(s) of Farming Company (hereinafter referred to collectively as the "defendants").

16.    At all times relevant to this action after January 1, 2014, defendants Brent and Rodney had and have the power to hire and fire the named Plaintiffs and the members of the classes and collective action that the named Plaintiffs seek to represent.  Defendant Rodney actually exercised that power on October 27, 2015 when he discharged plaintiff José Alberto Aguilera-Hernandez on that same date.

17.    At all times relevant to this action after January 1, 2014, defendants Brent and Rodney were and are the day to day managers with operational control over Farming Company.  Acting in that capacity, defendants Brent and Rodney directed the Plaintiffs and the members of the classes and collective action as to when, where, and how they were to

7

perform various types of agricultural work for one or more of the defendants on a day-to-day basis, allocated their respective work assignments, and determined the rate of pay and method of payment for all wages paid to the Plaintiffs and the members of the classes and collective action alleged in this Complaint.

18.     At all times relevant to this action after January 1, 2014, defendants Brent, Rodney, and Farming Company were and are the joint employers of the Plaintiffs and the members of the classes and collective action as defined by the FLSA and the NCWHA.

19.     At all times relevant to this action after January 1, 2014, defendants Farming Company, Brent, and Rodney were and are the joint employers of the Plaintiffs and the members of the classes and collective action as defined by the employment contract between those same defendants and the Plaintiffs and the members of the classes and collective action pursuant to the terms of federal regulations set forth in 20 C.F.R. §§ 655.103(b), 655.135, and 655.122(q)(2014), and the terms of the attached H-2A Agricultural and Food Processing Clearance Order Form 790 marked as Plaintiff's Exhibit A.

20.     At all times relevant to this action after January 1, 2014, defendants Farming Company, Brent, and Rodney were and are engaged in the planting, cultivation, weeding, harvesting, packing, and production of sweet potatoes, melons, broccoli, long green cucumbers, flue-cured tobacco, and other agricultural products in and around Sampson County, North Carolina for sale in interstate commerce.

21.     For each calendar year in the time period starting with January 1, 2013 and continuing through and including at least December 31, 2015, the employment of the Plaintiffs and the members of the classes and collective action was and is part of an

enterprise operated by Farming Company whose annual gross volume of sales or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that were separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A)(ii).

22.     For each calendar year in the time period starting with January 1, 2013 and continuing through and including at least December 31, 2015, the employment of the Plaintiffs and the members of the classes and collective action was and is part of an enterprise operated by Farming Company in which Farming Company had employees engaged in the production of goods for interstate commerce or had employees who were handling or otherwise working on goods or materials that had been moved in or produced for interstate commerce by some person or business entity within the meaning of 29 U.S.C. § 203(s)(1)(A)(i).

VI.     <u>FLSA STATUTORY COLLECTIVE ACTION #1</u>

23.     Pursuant to the collective action procedure specified at 29 U.S.C. §216(b), all Plaintiffs file this collective action and the First Claim for Relief by those same Plaintiffs and each similarly situated person employed under the H-2A program by one or more of the defendants at any time in calendar year 2015 on the condition that such person(s) files a Consent to Sue in this action pursuant to 29 U.S.C. §216(b) at any time before final judgment is entered in this action.

24.     This FLSA action is on behalf of those members of the FLSA collective action for at least the first workweek in calendar year 2015 that those same Plaintiffs and the members of the FLSA collective action performed any work in North Carolina for one or more of the defendants when that worker arrived in North Carolina after that

worker's transportation from Mexico to North Carolina pursuant to a labor certification and visa issued to Farming Company and those same workers under the H-2A program.

25.     Farming Company, Brent, and Rodney jointly or severally employed those same named Plaintiffs and/or an unspecified number of other alien workers under the H-2A program to perform various forms of agricultural work of the type described in paragraph 20 above of this Complaint for one or more of the defendants in at least the first workweek when those named Plaintiffs and their other co-workers arrived in North Carolina after their transportation directly from Mexico to North Carolina.

26.     This collective action by similarly situated persons under 29 U.S.C. §216(b) is based upon the failure of the defendants to reimburse those same named Plaintiffs and the members of the collective action on or before their regular payday for their first workweek or on a date falling within a reasonable time period after their regular payday for that first workweek or such other payday as may be required by the FLSA and/or pay in advance to the same named Plaintiffs and the members of the FLSA collective for certain transportation, visa expenses and fees, food expenses, lodging expenses, and visa processing and/or recruiting fees that those same named Plaintiffs and the members of the FLSA collective they seek to represent paid in Mexico before they performed any work in North Carolina under the H-2A program when those expenses and fees were primarily for the benefit of the named defendants as a condition of the those workers' employment by the defendants.

27.     As a result of this failure to reimburse and/or pay in advance in the manner that is described in paragraph 26 above, the wages that those same named Plaintiffs and the members of the collective action received free and clear from the named defendants on or

before the regularly scheduled payday and/or within a reasonable time for at least the first workweek that those same named Plaintiffs and the members of the collective action performed work in North Carolina for one or more of the defendants were less than the minimum wage required by 29 U.S.C. §206 on a weekly basis for each hour or part of an hour of actual work that those same named Plaintiffs and each such similarly situated person were employed to perform work for one or more of the defendants in at least the first workweek that each such person was so employed.

VII.    RULE 23(b)(3) CLASS #1 (NCWHA Wage Payment)

28.    The claim set forth in the Second Claim for Relief is brought by the named plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and the NCWHA.

29.    All of the named plaintiffs seek to represent a class consisting of all temporary foreign workers ("H-2A workers") who traveled directly from Mexico to North Carolina to work as a migrant agricultural employee of Farming Company at any time in calendar year 2015 and continuing thereafter until the date on which final judgment is filed in this action when the defendants failed to fully reimburse those H-2A workers on or before the first regular payday for those H-2A workers for all of the pre-employment expenses those workers paid as a condition of their employment by Farming Company as H-2A workers.

30.    The class described in paragraph 29 above is so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in the class defined in paragraph 29 above is known only to the defendants. However, the class is believed to include over fifty (50) individuals. The class defined in

paragraph 29 above is comprised of indigent migrant agricultural workers who maintain their permanent homes in or around various isolated or remote locations in Mexico. The class members of this same class are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members make the maintenance of separate actions by each class member infeasible.

31. There are questions of law and fact common to the class defined in paragraph 29 above. These common legal and factual questions are, among others:

(a) Did the defendants fail to pay all promised wages as disclosed pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) in violation of N.C.Gen.Stat. § 95-25.6 when the H-2A employment of the named plaintiffs and the members of the class they seek to represent were conditioned on making the pre-employment payments described in ¶¶92-103, inclusive, below (hereinafter referred to as "*de facto* wage deductions") as a condition of that H-2A employment by defendant Farming Company without full reimbursement on or before the first regular payday of those workers in the 2015 season and seasons after 2015 in North Carolina?

(b) Were each of the *de facto* wage deductions "primarily for the benefit of" or "for the benefit of" one or more of the defendants within the meaning of 29 C.F.R. §§ 531.3(d)(1), 532.32(a), and 532.32(c), and 13 NCAC Tit. 12 § .0301(d)?

(c) Did one or more of the defendants and/or one or more agent(s) of one or more of the defendants condition the H-2A employment of the class on making the *de facto* wage deductions by separate transaction where no law, rule, or regulation issued by

any governmental agency permitted the defendants or their agents to condition the H-2A employment of the named plaintiffs and those H-2A workers on making such payments?

32. The claims of the named plaintiffs are typical of the claims of the members of the class defined in paragraph 29 above, and those typical, common claims predominate over any questions affecting only individual class members. The named plaintiffs have the same interests as to other members of the class and will vigorously prosecute these interests on behalf of the class.

33. The named plaintiffs will fairly and adequately represent the interests of the class defined in paragraph 29 above.

34. The undersigned counsel Robert J. Willis for the named plaintiffs is an experienced litigator who has been named counsel for several class actions. Counsel for the named plaintiffs is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members under Rule 23(b)(3).

35. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class defined in paragraph 29 above in individually controlling the prosecution of separate actions;

(b) Many members of the class defined in paragraph 29 above are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     There has been no litigation already commenced against the Fowler defendants by the members of the class defined in paragraph 29 above to determine the questions presented;

(d)     It is desirable that the claims be heard in this forum because the defendants all reside in this district and the cause of action arose in this district;

(e)     A class action can be managed without undue difficulty because the defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the class defined in paragraph 29 above.

VIII.    RULE 23(b)(3) CLASS #2 (NCWHA Promised Wage for Piece Work)

36.     The claim set forth in the Third Claim for Relief is brought by one or more of the named Plaintiffs other than plaintiff Aguilera-Hernandez on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and the NCWHA.

37.     The Plaintiffs described in paragraph 36 above seek to represent a second class consisting of all persons employed in or around Sampson County, North Carolina by one or more of the defendants in 2015 or any harvest season after 2015 to perform any piece rate harvest work of sweet potatoes who were not paid the promised AEWR wage disclosed to them by one or more of the defendants pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) when that wage was due for every hour they worked in workweeks other than the first workweek that one or more of the defendants employed such persons as a result of the defendants' failure to pay wages to such persons for hours worked on a piece rate basis

by such persons that resulted in average hourly earnings during each such workweek that were at least equal to that same promised AEWR wage rate.

38. The class defined in paragraph 37 above is so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in the class defined in paragraph 37 above is known only to the defendants. However, the class defined in paragraph 37 above is believed to include over fifty (50) individuals. That same class is comprised of indigent migrant agricultural workers who maintain their permanent homes in or around various isolated or remote locations in Mexico. The class members of that same class are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members of that same class make the maintenance of separate actions by each such class member infeasible.

39. There are questions of law and fact common to the class defined in paragraph 37 above. These common legal and factual questions are, among others:

(a) Did the defendants fail to pay all promised wages as disclosed pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) in violation of N.C.Gen.Stat. § 95-25.6 by failing to pay wages to the members of the class defined in paragraph 37 above for hours worked on a piece rate basis by such persons that resulted in average hourly earnings during each such workweek that were at least equal to that same promised AEWR wage rate?

(b) Did one or more of the defendants and/or one or more agent(s) of one or more of the defendants disclose pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) to the members of the class defined in paragraph 37 above that the defendants would pay when due an amount of wages for every hour that the members of this class worked that were at

least equal to the product of the AEWR hourly rate and the total of actual hours worked when the members of that class worked on a piece rate basis and the piece rate earnings of the members of that class were less than the product of the actual hours worked and the AEWR hourly rate that one or more defendants had disclosed to the members of this class?

40.     The claims of the persons described in paragraphs 36 and 37 above are typical of the claims of the members of the class defined in paragraph 42 above, and those typical, common claims predominate over any questions affecting only individual class members. The Plaintiffs described in paragraph 36 have the same interests as to other members of the class defined in paragraph 37 above and will vigorously prosecute these interests on behalf of that same class.

41.     The Plaintiffs will fairly and adequately represent the interests of the class defined in paragraph 37 above.

42.     The undersigned counsel Robert J. Willis for the Plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members of the class defined in paragraph 37 above under Rule 23(b)(3).

43.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a)     The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class defined in paragraph 37 above in individually controlling the prosecution of separate actions;

(b)     Many members of the class defined in paragraph 37 above are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     There has been no litigation already commenced against the defendants by the members of the class defined in paragraph 37 above to determine the questions presented;

(d)     It is desirable that the claims be heard in this forum because the defendants all reside in this district and the cause of action arose in this district;

(e)     A class action can be managed without undue difficulty because the defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the class defined in paragraph 37 above.

IX.     <u>RULE 23(b)(3) CLASS #3 (NCWHA Uncompensated Hours Worked)</u>

44.     The claim set forth in the Fourth Claim for Relief is brought by the named Plaintiffs and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and the NCWHA.

45.     The Plaintiffs described in paragraph 44 above seek to represent a third class consisting of all persons employed in or around Sampson County, North Carolina by one or more of the defendants in 2015 or any harvest season after 2015 to perform seasonal agricultural work in tobacco, melons, broccoli, weeding or other work paid on an hourly basis who were not paid the promised AEWR wage disclosed to them by one or more of the defendants pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) when that weekly wage was due for every hour they worked in workweeks other than the first workweek that one or

more of the defendants employed such persons as a result of the defendants' failure to pay wages for hours worked in the form of travel that was all in a day's work.

46. The class defined in paragraph 45 above is so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in the class defined in paragraph 45 above is known only to the defendants. However, the class defined in paragraph 45 above is believed to include over fifty (50) individuals. That same class is comprised of indigent migrant agricultural workers who maintain their permanent homes in or around various isolated or remote locations in Mexico. The class members of that same class are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members of that same class make the maintenance of separate actions by each such class member infeasible.

47. There are questions of law and fact common to the class defined in paragraph 45 above. These common legal and factual questions are, among others:

(a) Did the defendants fail to pay all promised wages as disclosed pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) in violation of N.C.Gen.Stat. § 95-25.6 by failing to pay wages at the AEWR hourly rate disclosed to the members of the class defined in paragraph 45 above for hours worked in the form of travel that was all in a day's work?

(b) Did one or more of the defendants and/or one or more agent(s) of one or more of the defendants disclose pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) to the members of the class defined in paragraph 45 above that the defendants would pay wages when due for every hour that the members of this class worked at the AEWR hourly rate when that work was in the form of travel that was all in the a day's work?

48.     The claims of the persons described in paragraphs 44 and 45 above are typical of the claims of the members of the class defined in paragraph 45 above, and those typical, common claims predominate over any questions affecting only individual class members. The Plaintiffs described in paragraph 44 have the same interests as to other members of the class defined in paragraph 45 above and will vigorously prosecute these interests on behalf of that same class.

49.     The Plaintiffs will fairly and adequately represent the interests of the class defined in paragraph 45 above.

50.     The undersigned counsel Robert J. Willis for the Plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members of the class defined in paragraph 45 above under Rule 23(b)(3).

51.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a)     The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class defined in paragraph 45 above in individually controlling the prosecution of separate actions;

(b)     Many members of the class defined in paragraph 45 above are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     There has been no litigation already commenced against the defendants by the members of the class defined in paragraph 45 above to determine the questions presented;

(d)     It is desirable that the claims be heard in this forum because the defendants all reside in this district and the cause of action arose in this district;

(e)     A class action can be managed without undue difficulty because the defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the class defined in paragraph 45 above.

X.     RULE 23(b)(3) CLASS #4 (Breach of Contract)

52.     The claim set forth in the Fifth Claim for Relief is brought by the named plaintiffs and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and the common law of contract.

53.     The named plaintiffs described in paragraph 52 above seek to represent a fourth class consisting of all persons employed in or around Sampson County, North Carolina by one or more of the defendants in 2015 to perform seasonal agricultural work paid on an hourly or piece rate basis who were not paid free and clear the promised AEWR wage that one or more of the defendants contracted to pay them for all hours worked in 2015 in the first workweek that such persons were employed by one or more of the defendants in 2015 based upon the defendants failure to provide all of the reimbursements that the defendants contracted to provide when they contracted to provide them to those persons pursuant to the terms of contract set forth in Plaintiff's Exhibit A attached, 20 C.F.R. §§ 655.122(d)(1), 655.122(l), 655.122(p)(1)-(2),

655.122(q), and 655.135(e), N.C.Gen.Stat. §§ 95-25.8(a)(2), 95-25.8(b)(1), 95-25.8(c), and 95-25.8(e), and 13 NCAC Tit. 12 §§ .0301(a), .0301(c), .0301(d), and .0302(a).

54.    The class defined in paragraph 53 above is so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in the class defined in paragraph 53 above is known only to the defendants. However, the class defined in paragraph 53 above is believed to include over fifty (50) individuals. That same class is comprised of indigent migrant agricultural workers who maintain their permanent homes in or around various isolated or remote locations in Mexico. The class members of that same class are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members of that same class make the maintenance of separate actions by each such class member infeasible.

55.    There are questions of law and fact common to the class defined in paragraph 53 above.  These common legal and factual questions are, among others:

(a)    Did the defendants breach their the terms of the contract set forth in Plaintiff's Exhibit A attached, 20 C.F.R. §§ 655.122(d)(1), 655.122(l), 655.122(p)(1)-(2), 655.122(q), and 655.135(e), N.C.Gen.Stat. §§ 95-25.8(a)(2), 95-25.8(b)(1), 95-25.8(c), and 95-25.8(e), and 13 NCAC Tit. 12 §§ .0301(a), .0301(c), .0301(d), and .0302(a) when the defendants did not pay free and clear the plaintiffs and the class defined in paragraph 53 above the promised AEWR wage that one or more of the defendants contracted to pay them for all hours worked in 2015 in each workweek that such persons were employed by one or more of the defendants in 2015 when those wages were due?

(b)     Did the defendants breach their the terms of the contract set forth in Plaintiff's Exhibit A attached, 20 C.F.R. §§ 655.122(d)(1), 655.122(l), 655.122(p)(1)-(2), 655.122(q), and 655.135(e), N.C.Gen.Stat. §§ 95-25.8(a)(2), 95-25.8(b)(1), 95-25.8(c), and 95-25.8(e), and 13 NCAC Tit. 12 §§ .0301(a), .0301(c), .0301(d), and .0302(a) when the defendants did not provide to the plaintiffs and the class defined in paragraph 53 above all of the reimbursements that the defendants contracted to provide to those persons pursuant to the terms of contract set forth in Plaintiff's Exhibit A attached, 20 C.F.R. §§ 655.122(d)(1), 655.122(h)(1)-(2), 655.122(l), 655.122(p)(1)-(2), and 655.122(q), N.C.Gen.Stat. §§ 95-25.8(a)(2), 95-25.8(b)(1), 95-25.8(c), and 95-25.8(e), and 13 NCAC Tit. 12 §§ .0301(a), .0301(c), .0301(d), and .0302(a)?

(c)     Did one or more of the defendants contract to provide the Plaintiffs and the class of persons defined in paragraph 53 above with payment of the AEWR hourly wage free and clear and to provide reimbursements pursuant to the terms specified in Plaintiff's Exhibit A attached, 20 C.F.R. §§ 655.122(d)(1), 655.122(h)(1)-(2), 655.122(l), 655.122(p)(1)-(2), and 655.122(q), N.C.Gen.Stat. §§ 95-25.8(a)(2), 95-25.8(b)(1), 95-25.8(c), and 95-25.8(e), and 13 NCAC Tit. 12 §§ .0301(a), .0301(c), .0301(d), and .0302(a)?

56.     The claims of the persons described in paragraphs 52 and 53 above are typical of the claims of the members of the class defined in paragraph 53 above, and those typical, common claims predominate over any questions affecting only individual class members. The Plaintiffs described in paragraph 52 have the same interests as to other members of the class defined in paragraph 53 above and will vigorously prosecute these interests on behalf of that same class.

57. The Plaintiffs will fairly and adequately represent the interests of the class defined in paragraph 53 above.

58. The undersigned counsel Robert J. Willis for the Plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members of the class defined in paragraph 53 above under Rule 23(b)(3).

59. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class defined in paragraph 53 above in individually controlling the prosecution of separate actions;

(b) Many members of the class defined in paragraph 53 above are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) There has been no litigation already commenced against the defendants by the members of the class defined in paragraph 53 above to determine the questions presented;

(d) It is desirable that the claims be heard in this forum because the defendants all reside in this district and the cause of action arose in this district;

(e) A class action can be managed without undue difficulty because the defendants regularly committed the violations complained of herein, and were required to

maintain detailed records concerning each member of the class defined in paragraph 53 above.

XI.    <u>STATUTORY AND REGULATORY STRUCTURE - H-2A PROGRAM</u>

60.    The H-2A program was created by 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A), 1184(c), and 1188(a)(1), and was implemented pursuant to regulations found at 20 C.F.R. §§ 655.100-655.185 (2010). The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services of a temporary nature.

61.    Because of the lack of available documented workers in the areas of the operations of the defendants, Farming Company acting either directly, or through an authorized agent or association, applied for temporary certification by the U.S. Department of Labor ("DOL") to employ temporary foreign workers through the H-2A program, including applications submitted seeking workers for employment in each year from 2010 through at least 2016.

62.    Each such application made after March 15, 2010 must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.122 and 653.501 (2010), and must include an agreement to abide by the assurances required by 20 C.F.R. § 655.135 (2010). The job offer, commonly referred to as a "clearance order" or "job order", is used to recruit both United States and foreign nationals for H-2A visas. *See* Plaintiff's Exhibit A attached (2015 clearance order for Farming Company), and Plaintiff's Exhibit B attached (2016 clearance order for Farming Company).

63.    In the years from 2010 to and including at least 2016 for those years in which they were employed as H-2A workers by one or more of the defendants, the terms

and conditions in the job order became the employment contract between one or more of the defendants, the Plaintiffs, the members of the class and collective action, and/or H-2A workers whom the defendants employ or will employ in and around Sampson County, North Carolina 2016 under the H-2A program.

64.     As a condition of receiving temporary labor certification for the importation of H-2A workers, agricultural employers like defendant Farming Company are required to pay the highest of the "adverse effect wage rate" ("AEWR"), or the federal or state minimum wage. 20 C.F.R. §§ 655.120 and 655.122(l)(2010).

65.     At all times during the time period from January 1, 2014 to the present, agricultural employers like defendant Farming Company who employed H-2A workers were and are required to "keep accurate and adequate records" of workers' earnings. and 20 C.F.R. § 655.122(j)(1)(2014).

66.     In each of their H-2A contracts in at least calendar years 2010 through and including 2016, defendant Farming Company, defendant Rodney, and/or an authorized agent or association of which Farming Company was a member promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR, whichever was higher. *See, e.g.,* Plaintiff's Exhibit A attached at section entitled "Wage Rates, Special Pay Information and Deductions".

67.     In each of their H-2A contracts contained in the H-2A labor certification applications that they made after January 1, 2010 and before December 31, 2015, defendant Farming Company, defendant Rodney, and/or an authorized agent or association of which Farming Company was a member promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR, whichever was higher at the time

of recruitment. *See, e.g.,* Plaintiff's Exhibit A attached and Plaintiff's Exhibit B attached at sections entitled "Wage Rates, Special Pay Information and Deductions".

68.     In each of their H-2A contracts in at least calendar years 2010 through at least 2016, defendant Farming Company, defendant Rodney, and/or an authorized agent or association of which Farming Company was a member promised to "reimburse workers who complete 50 percent of the work contract period and who are not reasonably able to return the same day to their place of residence for the reasonable cost of transportation and subsistence from the place of recruitment to the place of employment." *See, e.g.,* Plaintiff's Exhibit A and Plaintiff's Exhibit B attached at sections entitled "Transportation".

69.     In each of their H-2A contracts in at least calendar years 2010 through at least 2016, defendant Farming Company, defendant Rodney, and/or an authorized agent or association of which Farming Company was a member to abide by the assurance regulations at 20 C.F.R. § 655.135(2010), and at 20 C.F.R. § 653.501 (2008), which govern the labor certification process for H-2A "employers" and "joint employers" as those terms are defined by 20 C.F.R. 655.103(b)(2010).   *See, e.g.,* Plaintiff's Exhibit A and Plaintiff's Exhibit B attached at sections entitled "Other Conditions of Employment".

XII.    <u>STATEMENT OF FACTS</u>

70.     Until the defendants terminated their membership in The North Carolina Grower's Association, Inc. ("NCGA") at some time in or about December 2014 or early 2015 and again did not renew that membership at some time in or about December 2015 or early 2016, the United States Department of Labor ("DOL") accepted the clearance orders of defendant Farming Company, defendant Rodney, and/or the authorized agent or authorized association, the NCGA for the planting, weeding, cultivation, and/or harvest

of melons, broccoli, strawberries, long green cucumbers, sweet potatoes, and/or flue-cured tobacco in each year in the time period from 2010 through at least 2016 and circulated each of them to local job service offices in an effort to recruit U.S. workers to fill the positions offered. When those efforts failed, DOL certified shortages of labor and the United States Citizenship and Immigration Services (USCIS) of the Department of Homeland Security or its predecessor, the United States Immigration and Naturalization Services (USINS) of the Department of Justice, issued H-2A visas to Mexican nationals other than the named Plaintiffs in 2016, to all of the named Plaintiffs in 2015, and, in the years before 2015, to one or more of the named Plaintiffs and the other members of the classes and collective action alleged above to fill the manpower needs of defendant Farming Company and defendant Rodney described in clearance orders of the type that are attached and marked to this Complaint as Plaintiff's Exhibit A (2015), Plaintiff's Exhibit B (2016), and Plaintiff's Exhibit C (2014).

71.     Pursuant to those H-2A visas, for each agricultural season that occurred in and around Sampson County, North Carolina in calendar years 2012 through and including at least 2014, the defendants, acting as a joint employer with the NCGA, imported and employed Plaintiffs Aguilera-Hernandez and Mendiola-Bordes under those same job order contracts to perform manual, seasonal agricultural labor and other forms of seasonal agricultural work as migrant workers in the planting, weeding, cultivation, and/or harvest of melons, strawberries, broccoli, long green cucumbers, sweet potatoes, and flue-cured tobacco for varying periods of time from on or about March through on or about December of each of those same years.

71A.    Pursuant to those H-2A visas, for the agricultural season that occurred in and around Sampson County, North Carolina in calendar year 2015, the defendants imported and employed the Plaintiffs and other members of the four (4) classes and one (1) collective action under those same job order contracts to perform manual, seasonal agricultural labor and other forms of seasonal agricultural work as migrant workers in the planting, weeding, cultivation, and/or harvest of melons, broccoli, long green cucumbers, sweet potatoes, and flue-cured tobacco for varying periods of time from on or about June 25, 2015 through on or about December 2, 2015.

72.    Pursuant to those H-2A visas that were issued to Mexican nationals other than the named plaintiffs in 2016, for the 2016 agricultural season that occurred in and around Sampson County, North Carolina in calendar year 2016 to date and continuing thereafter, the defendants imported and employed Mexican nationals other than the named Plaintiffs pursuant to the job order contract that is copied and marked as Plaintiff's Exhibit B and attached to this Complaint to perform manual, seasonal agricultural labor and other forms of seasonal agricultural work as migrant workers in the planting, weeding, cultivation, and/or harvest of melons, strawberries, broccoli, long green cucumbers, sweet potatoes, flue-cured tobacco, and/or other crops for varying periods of time from on or about February 26, 2016 to on or about December 15, 2016.

73.    A true and correct copy of the job order contract for defendant Farming Company to employ the Plaintiffs and the members of the four (4) classes and one (1) collective action under the H-2A program for the planting, weeding, cultivation, and/or harvest of melons, broccoli, long green cucumbers, sweet potatoes, and flue-cured tobacco harvest seasons in calendar year 2015 is attached marked as Plaintiff's Exhibit A.

74.     A true and correct copy of the job order contract for defendant Farming Company to employ Mexican nationals other than the named Plaintiffs under the H-2A program for the planting, weeding, cultivation, and/or harvest of melons, strawberries, broccoli, long green cucumbers, sweet potatoes, and flue-cured tobacco harvest seasons in calendar year 2016 is attached marked as Plaintiff's Exhibit B.

74A.    A true and correct copy of the job order contract for defendant Farming Company and the NCGA to jointly employ plaintiffs Aguilera-Hernandez and Mendiola-Bordes and other Mexican nationals under the H-2A program for the planting, weeding, cultivation, and/or harvest of melons, strawberries, broccoli, long green cucumbers, sweet potatoes, and flue-cured tobacco harvest seasons in calendar year 2014 is attached marked as Plaintiff's Exhibit C.

75.     In 2015, in 2016, and in each calendar year from 2010 through and including at least 2014, each employment contract of defendant Farming Company under the H-2A program contained an "Employer's Certification" that stated: "this job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job." *See, e.g.,* Plaintiff's Exhibit A, Plaintiff's Exhibit B, and Plaintiff's Exhibit C attached.

76.     To the extent that the employment contract copied in Plaintiff's Exhibit A attached notified the named plaintiffs and the members of the classes defined in ¶¶29, 37, 45, and 53 of the promised wages to be paid and any policy or practice that may affect the rate, amount, or payment of wages to the named plaintiffs and the members of those same classes, that employment contract was the defendants' written notification to all of those same H-2A employees and other persons employed in corresponding employment with the

meaning of 20 C.F.R. § 653.103(b) of the defendants' employment practices and policies with regard to promised wages for the 2015 agricultural season in North Carolina.

76A.    To the extent that the employment contract copied in Plaintiff's Exhibit C attached notified named plaintiffs Aguilera-Hernandez and Mendiola-Bordes and their H-2A co-workers of the promised wages to be paid and any policy or practice that may affect the rate, amount, or payment of wages to the named plaintiffs and the members of those same classes, that employment contract was NCGA's and the defendants' written notification to all of those same H-2A employees and other persons employed in corresponding employment with the meaning of 20 C.F.R. § 653.103(b) of the defendants' employment practices and policies with regard to promised wages for the 2014 agricultural season in North Carolina.

77.    In 2015, 2016, and each calendar year from 2010 through and including at least 2014, the "Employer's Certification" in each employment contract under the H-2A program of defendant Farming Company was signed by defendant Rodney as "Vice President of Jacksons Farming Company of Autryville" or by an authorized official of The North Carolina Grower's Association, Inc. ("NCGA") of which Farming Company was a member until at least the end of the 2014 agricultural season in North Carolina. *See, e.g.,* Plaintiff's Exhibit A, Plaintiff's Exhibit B, and Plaintiff's Exhibit C attached.

78.    In 2015, 2016, and in each calendar year from 2010 through and including at least 2014, each employment contract of defendant Farming Company or of the NCGA as the authorized agent of defendant Farming Company under the H-2A program contained a "Declaration of Employer" swearing "under penalty of perjury the foregoing is true and

correct." *See, e.g.,* Plaintiff's Exhibit A, Plaintiff's Exhibit B, and Plaintiff's Exhibit C attached.

79.     For the 2014 agricultural season H-2A employment contract of defendant Farming Company, acting through the NCGA as the authorized agent of defendant Farming Company under the H-2A program, one or more of the defendants promised to pay the applicable AEWR which was $9.87 per hour.

80.     For the 2015 agricultural season H-2A employment contract of defendant Farming Company, one or more of the defendants promised to pay the applicable AEWR which was $10.32 per hour.

81.     For the 2016 agricultural season H-2A employment contract of defendant Farming Company, one or more of the defendants promised to pay the applicable AEWR which was $10.72 per hour.

82.     In their 2014 agricultural season H-2A employment contract, defendants Farming Company, Brent, and Rodney, acting through the NCGA as the authorized agent of those same three (3) defendants under the H-2A program, promised and disclosed to named plaintiffs Aguilera-Hernandez and Mendiola-Bordes, and the other H-2A workers that Farming Company, Brent, and Rodney employed in North Carolina in 2014 pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) that if the worker's piece rate earnings for a pay period resulted in an average hourly earnings of less than the guaranteed AEWR and FLSA hourly minimum, the worker would be provided make-up pay by Farming Company to the guaranteed AEWR and FLSA minimum rate per hour.

83.     In their 2015 and 2016 agricultural season H-2A employment contract, defendants Farming Company, Brent and Rodney again promised and disclosed to the

workers that Farming Company, Brent and Rodney employed in North Carolina in 2015 and/or 2016 pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2)that if the worker's piece rate earnings for a pay period resulted in an average hourly earnings of less than the guaranteed AEWR and FLSA hourly minimum, the worker would be provided make-up pay by defendant Farming Company to the guaranteed AEWR and FLSA minimum hourly rate.

84.     In their 2014, 2015, and 2016 agricultural season H-2A employment contracts, defendants Farming Company, Brent, and Rodney, acting in 2014 through the NCGA as the authorized agent of defendants Farming Company, Brent, and Rodney under the H-2A program, and in 2015 and 2016 acting independently of the NCGA, promised and disclosed to the workers that Farming Company, Brent, and Rodney employed in North Carolina in 2014, 2015, and 2016 pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) that defendant Farming Company would pay all workers that it employed in North Carolina in 2014, 2015, and/or 2016 the guaranteed AEWR minimum for all hours worked, including any travel that was all in the day's work.

85.     In 2014 defendants Farming Company, Brent, and Rodney intentionally violated the promises and terms of the disclosures that are alleged in paragraphs 82 and 84 above when those defendants failed to pay plaintiffs Aguilera-Hernandez and/or Mendiola-Bordes, and the other H-2A worker employees for hours worked in the form of time spent by those employees in travel as part of their principal activity in the form of travel from one job site to another job site during the workday, and failed to pay plaintiff Mendiola-Bordes and other H-2A worker employees at the guaranteed AEWR minimum for all hours worked when the average hourly rate earned for harvest work on a piece work basis was less than that guaranteed AEWR minimum rate .

86.     In 2014 plaintiff Mendiola-Bordes and one or more other H-2A workers employed by Farming Company in the 2014 season filed a grievance against Farming Company with the NCGA pursuant to the collective bargaining agreement ("CBA") that the NCGA had with Farming Company and the Farm Labor Organizing Committee, AFL-CIO ("FLOC") in which those employees of Farming Company alleged the violations described in paragraph 85 above.

87.     Pursuant to the terms of the resolution of the grievance described in paragraph 86 above, in 2014 defendant Farming Company paid back wages to plaintiff Mendiola-Bordes and more than 20 other H-2A worker employees of the Farming Company.

88.     Almost immediately after the resolution of the grievance that is alleged in paragraphs 86-87 above, in or about December 2014 or 2015 defendant Farming Company decided to terminate its membership in the NCGA and its participation in the CBA that the NCGA had with FLOC, and, in or about December 2015 or in or about January or February 2016, decided to decline to renew that same membership and its participation in the CBA that the NCGA had with FLOC.

89.     In 2015 defendants Farming Company, Brent, and Rodney again intentionally violated the promises and terms of the disclosures that are alleged in paragraph 84 above when those defendants failed to pay the named plaintiffs and other members of the class defined in paragraph 45 above for hours worked in the form of time spent by those employees in travel as part of their principal activity in the form of travel from one job site to another job site during the workday.

90.    In more than one workweek in 2015 when the named plaintiffs and the members of the class defined in paragraph 45 above performed nothing but hourly work for the defendants, this 2015 violation again resulted in the defendants' failure to pay all wages when due to the named plaintiffs and the members of the class defined in paragraph 45 above on their regular weekly payday at the guaranteed AEWR of $10.32/hour.

91.    In 2015 defendants Farming Company, Brent, and Rodney intentionally violated the promises and terms of the disclosures that are alleged in paragraph 83 above when those defendants did not provide make-up pay to the guaranteed minimum rate when the piece rate earnings of some plaintiffs other than plaintiff Aguilera-Hernandez and the members of the class action alleged in paragraph 37 above for more than one pay period in 2015 resulted in average hourly earnings that were less than the guaranteed AEWR minimum rate.

92.    This violation resulted in the defendants' failure to pay all wages when due in more than one weekly pay period in 2015 to the named plaintiffs other than plaintiff Aguilera-Hernandez and the members of the class defined in paragraph 37 above on their regular weekly payday at the guaranteed AEWR of $10.32/hour.

93.    For the 2015 and 2016 agricultural seasons in North Carolina, the defendants retained attorney Andrew M. Jackson (hereinafter referred to as "Jackson") in Clinton, North Carolina to assist them with their H-2A certification application.

94.    Upon information and belief, in both 2015 and 2016, Jackson then secured the assistance of Graciela Arrellana (hereinafter referred to as "Graciela"), Luis Omar Gonzalez Solis (hereinafter referred to as "Luis"), and/or one or more person(s) associated

with or acting on behalf of or with Graciela and/or Luis as the agent of one or more of the defendants in Mexico to:

(a)     Identify and recruit any prospective H-2A employees that one or more of the defendants needed to meet their demand for manual workers to perform hand labor in the production and harvest of melons, tobacco, cucumbers, broccoli, sweet potatoes, and other agricultural products in and around Sampson County, North Carolina in 2015 and 2016,

(b)     Collect any fees that may be necessary to recruit, process, and/or transport the prospective H-2A employees of one or more of the defendants.

(c)     track the status of the H-2A workers that one or more of the defendants preferred to employ,

(d)     make adjustments to the status of the H-2A workers that one or more of the defendants preferred to employ based upon the information that Graciela and/or Luis received from one or more person(s) who were working with them or Jackson in Mexico and/or directly from the prospective H-2A employees themselves,

(e)     provide all necessary visa processing services, including but not limited to, visa processing assistance at the U.S. Consulate in Monterrey, Mexico, for the prospective H-2A employees that one or more of the defendants preferred to employ after those prospective employees had been identified by one or more of the defendants for Graciela, Luis, and/or Jackson,

(f)     maintain all contacts with any government agency of the United States, including but not limited to the U.S. Consulate in Mexico, as part of providing the services described in this paragraph of the Complaint,

(g)     provide all necessary recruitment for the timely replacement of prospective H-2A employees that one or more of the defendants preferred to employ if it were determined that any of those preferred employee(s) were not available for employment with one or more of the defendants in any particular season with the assistance of Graciela, Luis, and/or Jackson,

(h)     provide all necessary assistance to ensure that the prospective H-2A employees of one or more of the defendants were transported from at least Monterrey, Mexico if not their individual places of residence in Mexico to upstate North Carolina to arrive in upstate North Carolina in a timely fashion to begin their H-2A employment for one or more of the defendants.

95.     In calendar years 2015 through at least 2016, upon information and belief, the defendants and Andrew M. Jackson did not pay Graciela or Luis, or anyone or any entity associated with or acting on behalf of or with Graciela or Luis for any services that Graciela or Luis or any such person(s) or entity provided to any of the prospective H-2A employees of one or more of the defendants.

96.     For the 2015 season when the Plaintiffs, and for the 2016 season when Mexican nationals other than the named Plaintiffs traveled directly from Mexico to North Carolina to work for one or more of the defendants under the H-2A program, the named Plaintiffs and those Mexican nationals other than the named Plaintiffs were required in both 2015 and 2016 to pay visa, any applicable visa reciprocity/interview fees, and visa

processing fees to the agents of one or more of the defendants' agents in Mexico, including but not limited to Graciela, Luis, and/or one or more person(s) or entities associated with or acting on behalf of or with Graciela and/or Luis to secure an offer of employment with one or more of the defendants.

97.     For the 2015 season when the Plaintiffs, and for the 2016 season when Mexican nationals other than the named Plaintiffs traveled directly from Mexico to North Carolina to work for one or more of the defendants under the H-2A program, on or before their arrival in Monterrey to apply for their H-2A visas, the Plaintiffs and those Mexican nationals other than the named Plaintiffs paid to Graciela, one or more agent(s) or associates of Graciela, Luis, and/or other agent(s) of one or more of the defendants the visa fee, any applicable visa reciprocity/interview fees, and visa processing fees of approximately USD$190 as a condition of being considered for any position of employment as an H-2A worker for one or more of the defendants.

98.     For each instance in 2015 and/or 2016 that Graciela, one or more agent(s) or associates of Graciela, Luis or person(s) acting on his behalf collected that same payment by Plaintiffs and/or one or more of those Mexican nationals other than the named Plaintiffs, the collection of each such payment(s) was within the scope of the agency relationship that Graciela, those same agent(s) or associates of Graciela, and Luis had with one or more of the defendants, Jackson, and Graciela.

99.     For the 2015 season when the Plaintiffs, and for the 2016 season when Mexican nationals other than the named Plaintiffs traveled directly from Mexico to North Carolina to work for one or more of the defendants under the H-2A program, Plaintiffs incurred various expenses for the cost of inbound transportation from the place where they

were recruited to Monterrey, Mexico to apply for H-2A visas, from Monterrey, Mexico to the border of the United States and Mexico at Laredo, Texas, and from Laredo, Texas to Sampson County, North Carolina.

100. Although the Plaintiffs reported to Monterrey in 2015 for the processing of their H-2A visa applications on the dates dictated by one or more of the defendants and/or one or more agent(s) of the defendants such as Graciela or Luis, the processing of those H-2A visas was delayed for, depending upon the visa interview date, anywhere from five (5) to eleven (11) or more days. Acting at the express direction in 2015 of one or more of the defendants and/or one or more of their agents such as Graciela or Luis to wait in Monterrey for the issuance of their H-2A visas to allow them to travel to North Carolina to being their work for the defendants as soon as possible, the Plaintiffs incurred expenses in 2015 for lodging in Monterrey at the rate of approximately $200 Mexican pesos per night plus food costs of approximately USD$11.86/day during the time period that they were waiting for their H-2A visa applications to be processed by the U.S. Consulate.

101. After a considerable wait in Monterrey in 2015, all of the plaintiffs were directed to and actually did return in 2015 to the place from which each of them was recruited to await instructions from Graciela or Luis as to when to return to Monterrey to await the issuance of their H-2A visa so allow them to depart for Sampson County, North Carolina to work under the H-2A program with the defendants.

102. Acting at the express direction of one or more of the defendants and/or one or more of their agents such as Graciela or Luis, the plaintiffs then waited in 2015 in their residences in Mexico until one or more of the defendants and/or one or more of their agents such as Graciela or Luis instructed them to return to Monterrey in 2015 to wait anew for the

U.S. Consulate in Monterrey to issue their H-2A visas to allow them to travel to North Carolina to begin their work for the defendants as soon as possible. As a result, the Plaintiffs incurred expenses in 2015 for another night of lodging in Monterrey at the rate of approximately $200 Mexican pesos plus one day's food costs of approximately USD$11.86/day during this second time period that they were waiting for their H-2A visa applications to be processed by the U.S. Consulate.

103. As a result of the instructions and resulting travel and waiting described in paragraphs 101-102 above, each named plaintiff incurred additional expenses in 2015 for the cost of roundtrip transportation to the place where they were recruited from Monterrey and back, and another night of waiting in a hotel in Monterrey for the U.S. Consulate to issue their H-2A visa so that they could depart for their H-2A work for the defendants in Sampson County, North Carolina.

104. In 2015, after the named plaintiffs finally received their H-2A visas to cross the Mexico-USA border to work for one or more of the defendants under the H-2A program, the Plaintiffs paid $6.00 to the U.S. government for the issuance of the Customs and Border Patrol Form I-94 required to enter the United States to work for one or more of the defendants.

105. The total of the inbound expenses incurred in 2015 that are described in ¶¶96-104 above for each of the named plaintiffs Constantino Sanchez Rodriguez, Ulises Edgardo Cruz Gonzalez, Esmith Gonzalez Rodriguez, Valentin Alvarado Hernandez, and Daniel Rodriguez Garcia (hereinafter referred to as the "Tlaxcala plaintiffs"), and the other similarly situated employees of defendant Farming Company defined in ¶¶23-24 above was in excess of USD$946.

106.    The total of the inbound expenses incurred in 2015 that are described in ¶¶96-104 above for each of the named plaintiffs José Alberto Aguilera-Hernandez and Esdras Sahi Mendiola Bordes (hereinafter referred to as the "Veracruz plaintiffs"), and the other similarly situated employees of defendant Farming Company defined in ¶¶23-24 above was in excess of USD$772.

107.    All of the inbound expenses incurred in 2015 by the Tlaxcala plaintiffs, the Veracruz plaintiffs, the other similarly situated employees of defendant defined in ¶¶23-24 above, and the members of the classes that are defined in ¶¶29 and 53 above were a condition of their H-2A employment by defendant Farming Company in 2015.

108.    All of the 2015 inbound expenses described in ¶¶96-107 above for each of the Tlaxcala plaintiffs, each of the Veracruz plaintiffs, the other similarly situated employees of defendant defined in ¶¶23-24 above, and each member of the classes defined in ¶¶29 and 53 above were primarily for the benefit of defendant Farming Company within the meaning of 29 C.F.R. §§ 531.3(d)(1), 531.32(a), 531.32(c), and 778.217 and 13 NCAC Tit. 12 § .0301(d).

109.    As a result of the *de facto* wage deduction that resulted from the payment of the inbound expenses described in ¶¶96-108 above from the wages paid free and clear in North Carolina in 2015 to the Tlaxcala plaintiffs, the Veracruz plaintiffs, the other similarly situated employees of defendant Farming Company defined in ¶¶23-24 above, and the members of the classes defined in ¶¶29 and 53 above on or before their regular payday for their first workweek in North Carolina, all of those employees of defendant Farming Company were paid wages in Sampson County, North Carolina in 2015 for the work that they performed in that County at less than the minimum rate required by 29

U.S.C. § 206(a), less than the adverse effect wage rate (AEWR) hourly rate that was disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), and less than the AEWR contract rate promised in the contract that the defendant Farming Company had with all of those same employees for each hour that all of those employees worked in that first workweek.

110.    In 2015 when the defendants failed to reimburse the named plaintiffs and the members of the class defined in ¶29 above for all of the inbound expenses that are described in ¶¶96-107 above that they had contracted to reimburse the named plaintiffs and those same employees on or before the regular payday in addition to the a sum equal to the product of the total hours worked in the first workweek in North Carolina in 2015 by each of those same employees multiplied by the AEWR of $10.32/hour for 2015 for the work performed in that first workweek by those same employees, the defendants failed to pay all wages when due under N.C.Gen.Stat. § 95-25.6 to all of those same employees for that first workweek of work performed in Sampson County, North Carolina by the named plaintiffs and the members of the class defined in ¶29 above.

111.    With this same combined failure to reimburse and pay wages when due in 2015 for all hours worked in the first workweek in 2015, and their failure to pay for all hours worked after that first workweek as promised in their contract of employment with the named plaintiffs and the class members defined in ¶53 above, the defendants also breached their contract of employment with all named plaintiffs and the class of employees who are defined in ¶53 above that the plaintiffs seeks to represent through their failure to comply with all applicable employment-related laws and their contractual obligations in their contract of employment with the named plaintiffs and all of those same employees.

112.     As a proximate result of this alleged breach of contract by one or more of the defendants and this failure to pay all wages when due in violation of N.C.Gen.Stat. § 95-25.6, the named plaintiffs and each member of the classes defined in ¶29 and 53 above have suffered damages in the form of lost wages in excess of at least $100 per person.

113.     Upon information and belief, before 2015, one or more of the defendants were on notice of their obligations under the FLSA and the NCWHA with respect to their duty to reimburse the Plaintiffs for *de facto* wage deductions of the type that are involved here through: (a) their status as previous members of a defendant class in litigation in the years 2004, 2005, and 2006 under the NCWHA in which it was alleged that one or more of the defendants made *de facto* wage deductions that were the same or similar to the *de facto* wage deductions that are alleged in this complaint, (b) their participation in one or more conferences and/or training sessions in which the requirements of *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002)("*Arriaga*"), were discussed, (c) their receipt of written materials, newsletter(s), bulletin(s). or other information concerning the requirements and application of *Arriaga*, (d) their participation in the 2014 wage grievance by FLOC on behalf of a number of FLOC's members in 2014 which involved claims that certain employees of Farming Company were not paid for all hours worked in2014 based upon the defendants' improper counting of compensable hours worked under the FLSA and the NCWHA.

114.     The only exception to the continued employment of all named plaintiffs for the entire agricultural season in 2015 that is described in ¶71 above is the defendants' retaliatory discharge of plaintiff Aguilera-Hernandez on or about October 28, 2015 because plaintiff Aguilera-Hernandez filed an internal oral complaint.

115. About two months before October 27, 2015 plaintiff Aguilera-Hernandez (hereinafter "Aguilera") accidentally damaged a gasoline pump that was located on the property of one or more of the defendants. The defendants furnished this pump to supply gasoline for the various farm vehicles and trucks that the defendants and its employees used in the defendants' business operations.

116. At the time the plaintiff accidentally damaged that gasoline pump, one or more of the defendants or their agents informed him that Aguilera would have to pay for the cost of repairing or replacing the pump, and that the cost of doing so might be as high as $1,000.

117. As a disciplinary measure, defendant Rodney and defendant Farming Company made Aguilera to sit out of work for 3 days. When Aguilera returned to work, the defendants changed his work assignment from driving tractors (which job he had performed on a regular basis for the last 3 years) to that of a field worker (harvesting tobacco, melon, and sweet potatoes, and putting plastic).

118. After Aguilera's return to work, the defendants and persons acting as their agents never said anything again to Aguilera about the incident until October 26, 2015, when Rodney and/or Brent and persons acting as their agents told Aguilera the repair costs would total over $2,400.

119. In the time period from October 22, 2015 through part of the workday on October 27, 2015, inclusive, Aguilera performed more than 40 hours of work for the defendants. In the workweek that included the time period from October 15, 2015 through and including October 21, 2015, Aguilera performed more than 46.27 hours of work and was paid USD $586.83.

120.    On October 27, 2016, defendants Rodney and Farming Company or persons acting at their direction pulled Aguilera out of the field and directed him to report to the office of Farming Company.  On Aguilera's arrival at the office, defendant Rodney instructed Aguilera that Aguilera would be required to pay for all of the repair costs through weekly wage deductions that Aguilera would be required to permit from the wages that earned through the end of the 2015 H-2A contract.

121.    Aguilera said it wasn't fair for Farming Company to do that because he only had about 4-5 weeks left of work and he was only making about $600 per week or less working about 55 to 60 hours or less per week.  If Farming Company deducted enough per week to recover all of the $2,400 over that time period, Farming Company would be deducting about $480 per week which in the best of circumstances would only leave him with enough money to feed himself and virtually nothing to send to his family.

122.    Defendant Rodney then told him he could just take $200 out of each check and Aguilera did not agree to a wage deduction in that amount for the same reasons.

123.    Defendant Rodney then became really angry, began to yell at Aguilera, and to insult him.  Then defendant Rodney told Aguilera he was fired, and that he was going to also fire his brother (although defendant Rodney later decided not to).

124.    By taking the actions that are described in ¶¶120-23 above, plaintiff Aguilera raised an internal complaint with defendants Rodney and Farming Company.

125.    Based upon his long experience with H-2A regulations and his personal familiarity with the requirements of the FLSA and the NCWHA, defendant Rodney understood the actions of Aguilera that are described in ¶¶120-23 above to be raising rights protected by the FLSA and the NCWHA with respect to the prohibition of making

wage deductions that resulted in net wages of less than the minimum rate required by the FLSA and the NCWHA, and a call by Aguilera for the protection of those rights.

126.    This decision to fire Aguilera that is described in ¶123 above was motivated by Aguilera's internal complaint that is described in ¶¶124-25 above to defendant Rodney that Aguilera would not permit the defendants to make wage deductions from Aguilera's weekly wages which reduced the amount of wages that Aguilera received free and clear below the lawful rate of $7.25 per hour and the lawful and contracted rate of $10.32 per hour.

127.    After defendants decided to fire Aguilera, defendant Rodney told Aguilera he had 30 minutes to leave the premises or he would call the police and have him arrested.   Defendant Rodney then had the onsite supervisor go to the housing with Aguilera to stand there as Aguilera packed his bags to leave.   Defendant Rodney and defendant Farming Company also refused to provide Aguilera with transportation anywhere so Aguilera was forced to importune the owner of a local store to pick him up from the defendants' packing house.

128.    The defendants, acting on the decision of defendant Rodney, denied Aguilera the return travel payment required by 20 C.F.R. § 655.122(h)(2) so that Aguilera had to himself pay for his transportation and daily subsistence from his place of employment at Farming Company in Sampson County, North Carolina to Veracruz, Mexico, the place from which Aguilera departed to work for the defendants in 2015. Aguilera paid more than USD $500 for that transportation and more than USD $25 for that daily subsistence.

129.     The return travel payment required by 20 C.F.R. § 655.122(h)(2) for Aguilera to return to the place in Mexico from which he departed to work for the defendants in 2015 was primarily for the convenience of the defendants and required by the terms of the contract set forth in Plaintiff's Exhibit A attached.

130.     As a result of the actions described in ¶¶127-28 above, the defendants did not pay Aguilera wages free and clear for either of the two periods of work in the workweeks that are described in ¶119 above at the minimum rate required by 29 U.S.C. § 206, failed to pay wages when due under N.C.Gen.Stat. § 95-25.6 for that same workweek and the workweek immediately preceding that workweek, and failed to comply with the contract wage rate specified in Plaintiff's Exhibit A attached for both such workweeks.

131.     The defendants have decided to not use the services Jackson, Graciela, and/or Luis that are described in ¶94 above to recruit, hire and employ plaintiff Aguilera for the 2016 agricultural season and seasons after 2016 in and around Sampson County, North Carolina pursuant to the H-2A visa program.

132.     The decision of the defendants that is described in ¶131 above was motivated by Aguilera's internal complaint that is described in ¶¶125-26 above to defendant Rodney that Aguilera would not permit the defendants to make wage deductions from Aguilera's weekly wages which reduced the amount of wages that Aguilera received free and clear below the lawful rate of $7.25 per hour and the lawful and contracted rate of $10.32 per hour.

133. As a direct and proximate result of the defendants' unlawful and retaliatory decision that is described in ¶¶131-32 above and wrongful discharge of the plaintiff on October 27, 2015, plaintiff Aguilera has suffered the following damages:

(a) Substantial damages through the loss of employment by Farming Company at the AEWR for the remainder of the 2015 contract period, and for the contract period in 2016 for the time period from on or about February 26, 2016 through on or about December 15, 2016 for the higher of the guaranteed minimum number of hours of work for all persons employed by one or more of the defendants under the H-2A program for the 2016 agricultural season pursuant to an H-2A contract of the type set forth in Plaintiff's Exhibit A attached or the average total amount of wages earned by all such employees during the 2016 H-2A agricultural season in North Carolina.

(b) Severe emotional distress through the abrupt and outrageous manner in which his employment was terminated on October 27, 2015.

134. As a direct and proximate result of the defendants' unlawful and retaliatory decision that is described in ¶¶131-32 above, plaintiff Aguilera will suffer substantial damages through the loss of employment at the AEWR years after 2016 in North Carolina for the time period from on or about February 26 through on or about December 15 of each such year for the higher of the guaranteed minimum number of hours of work for all persons employed by one or more of the defendants under the H-2A program in each such H-2A agricultural season or the average total amount of wages earned by all such employees during each such agricultural season in North Carolina.

135. On December 16, 2015, before the defendants initiated the hiring process of Mexican nationals that is described in ¶¶93-95 above for employment by the

defendants under the H-2A program in and around Sampson County, North Carolina for the 2016 agricultural season, all of the named Plaintiffs, acting through counsel, sent a demand letter to all of the defendants. In that demand letter, they the expressly alleged the same three (3) FLSA and NCWHA claims that they alleged in the original Complaint filed in this action on February 23, 2016 concerning the 2015 violations of their FLSA and NCWHA rights that occurred during their joint and several employment by the defendants in North Carolina in 2015, and requested an opportunity to talk settlement of this matter to obtain a reasonable, out-of-court remedy for the violation of their FLSA and NCWHA rights before any complaint was filed in court.

136.    Starting in early January 2016 if not immediately after the defendants' receipt of the December 16, 2015 letter that is described in ¶135 above, and continuing thereafter, an authorized, permanent, and fulltime employee of the defendants, Heather Register, repeatedly and directly telephoned almost all if not all of the named plaintiffs other than plaintiff Aguilera-Hernandez.

137.    In those telephone communications that were made with the authorization, knowledge, and consent of the defendants, Ms. Register repeatedly and directly threatened each plaintiff with whom she spoke that if that plaintiff and the other plaintiffs who were not on the telephone did not drop the FLSA and NCWHA claims that all named plaintiffs had raised in their December 16, 2015 letter, the defendants would not seek to re-hire any of them under the H-2A program pursuant to the process that is described in ¶¶93-95 above.

138.    At the time that she made those calls Heather Register was listed as the defendants' contact person for referral and hiring information in both the 2015 and the

2016 applications to obtain the required U.S. Department of Labor (DOL) certifications to employ Mexican nationals under the H-2A program. See "Referral Instructions/Hiring Information" in Box 15 of Plaintiff's Exhibit A and Plaintiff's Exhibit B attached.

139. Starting at about or shortly after Ms. Register started to make the calls that are described in ¶¶136-38 above, all of the named plaintiffs sought to be rehired under the H-2A program by contacting the recruiting agents described in ¶94 above to specifically advise them of the desire of the named plaintiffs to be re-hired by the defendants for the 2016 season under the H-2A program.

140. However, as threatened by Ms. Register, the defendants intentionally omitted the names of all of the named plaintiffs from the list of Mexican nationals to be re-hired for the 2016 agricultural season that the defendants provided to the defendants' recruiters and agents in Mexico, as described in ¶94 above.

141. As a direct and proximate result, and acting pursuant to the express instructions from the defendants and their authorized agents, those recruiters and agents in Mexico intentionally did not take the necessary actions in 2016 that were and are necessary to re-hire the named plaintiffs for employment by the defendants under the H-2A program in or around Sampson County, North Carolina for the 2016 agricultural season pursuant to the terms of the clearance order job contract that is copied and attached to this complaint marked as Plaintiff's Exhibit B.

142. As a direct and proximate result, and acting pursuant to the express instructions from the defendants and their authorized agents, those recruiters and agents in Mexico have advised each of the Plaintiffs that they are not on the defendants' list to be re-hired through the re-hiring process that is described in ¶94 above of this complaint

for employment by the defendants under the H-2A program in or around Sampson County, North Carolina for the 2016 agricultural season pursuant to the terms of the clearance order job contract that is copied and attached to this complaint marked as Plaintiff's Exhibit B.

143.     Instead, those same recruiters and agents in Mexico hired only Mexican nationals who, while they may have been jointly and severally employed by the defendants in 2015 to perform some of the same work that the named Plaintiffs performed pursuant to the terms of the clearance order job contract that is copied and attached to this complaint marked as Plaintiff's Exhibit A in 2015, had not participated in making the December 16, 2015 demand letter to complain about and seek a remedy for the violation of their FLSA and NCWHA rights.

144.     The decisions that are described in ¶88 above and the decision to refuse to re-hire all of the named Plaintiffs that is described in ¶¶136-143 above was made with the intent to retaliate and discriminate against both plaintiff Mendiola-Bordes and other H-2A workers who filed the wage grievance that is described in ¶¶86-87 above of this complaint and all named Plaintiffs who participated in the named Plaintiff's demand and complaint letter of December 16, 2015 to the defendants that the defendants had violated the FLSA and NCWHA rights of the named Plaintiffs in the same way that was alleged in the original Complaint filed by the named Plaintiffs and in this Amended Complaint.

145.     As a direct and proximate result of the defendants' unlawful and retaliatory decision and refusal to re-hire the named Plaintiffs that is described in ¶¶136-144 above, all of the named Plaintiffs and plaintiff Aguilera has suffered the following damages:

(a)     Substantial damages through the loss of employment by Farming Company at the AEWR for the contract period in 2016 for the time period from on or about February 26, 2016 through on or about December 15, 2016 for the higher of the guaranteed minimum number of hours of work for all persons employed by one or more of the defendants under the H-2A program for the 2016 agricultural season pursuant to an H-2A contract of the type set forth in Plaintiff's Exhibit A attached or the average total amount of wages earned by all such employees during the 2016 H-2A agricultural season in North Carolina.

(b)     Severe emotional distress through the willful and repeated threats to not re-hire the named Plaintiffs for H-2A employment by the defendants for the 2016 agricultural season.

146.    As a direct and proximate result of the defendants' unlawful and retaliatory decision that is described in ¶¶136-144 above, all of the named Plaintiffs will suffer substantial damages through the loss of employment at the AEWR years after 2016 in North Carolina for the time period from on or about February 26 through on or about December 15 of each such year for the higher of the guaranteed minimum number of hours of work for all persons employed by one or more of the defendants under the H-2A program in each such H-2A agricultural season or the average total amount of wages earned by all such employees during each such agricultural season in North Carolina.

146A.   As a direct and proximate result of the defendants' unlawful, discriminatory, and retaliatory decisions that are described in ¶¶88 and 144 above of this complaint have also caused plaintiff Mendiola Bordes to suffer damages and irreparable harm in the form of: (a) the litigation costs that he has had to incur to pursue this

litigation because of the unavailability of the inexpensive and readily accessible CBA grievance procedure that he, with the assistance of FLOC, used in 2014 to resolve materially identical wage violations that were again raised on his behalf in a December 16, 2015 demand letter from his undersigned counsel in connection with the H-2A employment of plaintiff Mendiola-Bordes by the defendants in the 2015 season. If that CBA grievance procedure continued to be available to plaintiff Mendiola-Bordes for use in connection with the matters that are the subject of this complaint and other employment-related disputes, he and FLOC could and would have used it to resolve that grievance through the final step of binding arbitration with the Dunlop Commission of three (3) experienced arbitrators, and could do so in the future with respect to other employment-related disputes without the need to use the expensive, comparatively cumbersome, and culturally-inaccessible dispute resolution procedures of federal court litigation.

146B. Each of the plaintiffs has filed an administrative complaint with the North Carolina Department of Labor Employment Discrimination Bureau ("EDB") within 180 days of the discriminatory and retaliatory decisions that are described in ¶¶88 and 144 above of this complaint pursuant to N.C.Gen.Stat. § 95-242(a) on the following dates:

    (a) Plaintiff Aguilera-Hernandez – March 15, 2016.

    (b) Plaintiff Mendiola-Bordes – May 6, 2016 (separate complaints against actions described in ¶¶88 and 144 above).

    (c) Plaintiff Gonzalez-Rodriguez – May 6, 2016.

    (d) Plaintiff Rodriguez-Garcia – May 6, 2016.

    (e) Plaintiff Sanchez-Rodriguez – May 6, 2016.

(f) Plaintiff Alvarado-Hernandez – June 2, 2016,

(g) Plaintiff Cruz-Gonzalez – June 2, 2016.

146C.   Each of the named plaintiffs has fully cooperated with the efforts of the EDB to investigate their administrative complaints pursuant to N.C.Gen.Stat. § 95-242(a).

146D.   To date, the EDB has not issued any notice of conciliation failure pursuant to N.C.Gen.Stat. § 95-242(c) and has not commenced an action pursuant to N.C.Gen.Stat. § 95-242.

146E.   Ninety (90) days following the filing of each of their administrative complaints to the EDB, each named plaintiff has requested that the EDB issue a right-to-sue letter to that named plaintiff pursuant to N.C.Gen.Stat. § 95-242(c).

146F.   As of yet, the EDB has not granted the request to the EDB that is alleged in ¶146E above of this complaint.

## XIII.   FIRST CLAIM FOR RELIEF (FLSA collective action & Aguilera individual claim)

147.     Paragraphs 6 through 27, and 60-113, 119, and 127, inclusive, above are realleged and incorporated herein by reference by the Tlaxcala Plaintiffs, plaintiff Aguilera, and the members of the FLSA collective action defined in ¶¶23-24 above.

148.     The defendants did not pay Tlaxcala plaintiffs and the employees who are members of the FLSA collective action defined in ¶¶23-24 above at the rate required by 29 U.S.C. § 206(a) for their work for the defendants based upon the *de facto* wage deductions that the defendants required those workers to pay in order to work for one or more of the defendants and the defendants' failure to reimburse those workers for those same *de facto*

wage deductions when those *de facto* wage deductions were primarily for the benefit of the defendants.

149.    The defendants did not pay plaintiff Aguilera at the rate required by 29 U.S.C. § 206(a) for his work in the workweek that started with October 22, 2015 that included one of the time periods described in ¶119 above based upon the *de facto* wage deductions described in ¶127 above that the defendants required plaintiff Aguilera to pay in order to work for one or more of the defendants and the defendants' failure to reimburse him for those same *de facto* wage deductions when those *de facto* wage deductions were primarily for the benefit of the defendants.

150.    As a result of these actions of the defendants in disregard of the right of the Tlaxcala plaintiffs, plaintiff Aguilera, and the employees who are members of the FLSA collective action defined in ¶¶23-24 above to timely payment of the minimum wage rate required by the FLSA, those same plaintiffs and employees have suffered damages in the form of unpaid wages at the minimum rate required by the FLSA and liquidated damages that may be recovered under 29 U.S.C. §216(b).

XIV.    SECOND CLAIM FOR RELIEF (NCWHA Class #1 & Aguilera individual claim)

151.    Paragraphs 6 through 22, 28-35, 60-78, 80, 93-110, 1112-113, 119, and 127, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs, plaintiff Aguilera, and the members of the NCWHA class #1 defined in ¶29 above that all named plaintiffs seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against all defendants under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

152.    As alleged in ¶¶28-35, 60-78, 80, 93-110, 112-113, above, inclusive, all defendants violated their duty to all named plaintiffs and the class defined in ¶29 above that

all named plaintiffs seek to represent to pay all wages under N.C.Gen.Stat. § 95-25.6 when those wages were due pursuant to the terms of the agreement and disclosures that are described in ¶¶76-78 and 80 above that all defendants made to all named plaintiffs and the members of the class defined in ¶29 above based upon the *de facto* wage deduction that is described in ¶¶96 through 110, inclusive, above.

153.    As alleged in ¶¶60-78, 80, 119, and 127 above, inclusive, all defendants violated their duty to named plaintiff Aguilera to pay all wages under N.C.Gen.Stat. § 95-25.6 when those wages were due for the work that plaintiff Aguilera performed in the workweeks and time periods that are described in ¶119 above pursuant to the terms of the agreement and disclosures that are described in ¶¶76-78 and 80 above that all defendants made to plaintiff Aguilera as alleged in ¶¶76-78 and 80 above based upon the *de facto* wage deduction that is described in ¶127 above.

154.    As a result of the actions or omissions of all defendants that are described or referred to in ¶¶76-78, 80, 109-112, and 127 above of this complaint, all named plaintiffs and each person who is a member of the class defined in ¶29 above of this complaint have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-25.22(a1).

XV.    THIRD CLAIM FOR RELIEF (NCWHA Class #2 piece work)

155.    Paragraphs 6 through 22, 36-43, and 60-83, 91-92, and 113, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs and each member of the class defined in ¶37 of this complaint that all named plaintiffs except plaintiff Aguilera seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against all defendants under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

156.    As alleged in ¶¶70-83, 91-92, and 113, inclusive, above, the defendants violated their duty to all of these same named plaintiffs and the class defined in ¶37 above to pay all wages under N.C.Gen.Stat. § 95-25.6 when those wages were due pursuant to the terms of the agreement and disclosures that are described in ¶¶70-83, inclusive, above, that all defendants made pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) to these same named plaintiffs and the members of the class defined in ¶37 above.

157.    As a result of the actions or omissions of all defendants that are described or referred to in ¶¶70-83, and 91-92 above of this complaint, all named plaintiffs except Aguilera and each person who is a member of the class defined in ¶37 above of this complaint have suffered damages in the form of underpayment of wages and liquidated damages that may be recovered under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

XVI.    <u>FOURTH CLAIM FOR RELIEF (NCWHA Class #3 travel all in a day's work)</u>

158.    Paragraphs 6 through 22, 44-51, 60-69, 70-80, 84-85, 89-90, and 113, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs and each member of the class action defined in ¶45 above of this complaint that all of the named plaintiffs seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against all defendants under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

159.    As alleged in ¶¶80, 84, and 89-90 above, all defendants violated their duty to all named plaintiffs and the members of the class action defined in ¶45 above to pay promised wages at the AEWR rate disclosed pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) for the work described in ¶¶70-72, 84-85, and 89-90 above that all named plaintiffs and the members of the class action defined in ¶45 above performed for all defendants.

160.    As a result of the actions or omissions of all defendants that are described or referred to in ¶¶6 through 22, 44-51, 60-69, 70-80, 84-85, 89-90, and 113, inclusive, above of this complaint, all named plaintiffs and each person who is a member of the class defined in ¶45 above of this complaint have suffered damages in the form of underpayment of wages and liquidated damages that may be recovered under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

XVII.    FIFTH CLAIM FOR RELIEF (Contract Class AEWR wage & Aguilera)

161.    Paragraphs 6 through 22, 52-79, 93-109, 111, 119, and 127, inclusive, above are realleged and incorporated herein by reference by all of the named plaintiffs on behalf of the class defined in ¶53 above and plaintiff Aguilera individually.

162.    One or more of the defendants breached their contract set forth in Plaintiff's Exhibit A attached with the named plaintiffs and the members of the class defined in ¶53 above to pay all wages due when those wages were due at the AEWR or contract rate on the first regular payday for the work performed in the first workweek by the named plaintiffs and those same class members when one or more of those same defendants did not pay all those same wages based upon the *de facto* wage deduction that each of the named plaintiffs and the members of the class defined in ¶53 above were required to pay on or before that first regular payday.

163.    One or more of the defendants breached their contract set forth in Plaintiff's Exhibit A attached with plaintiff Aguilera to pay all wages due when those wages were due at the AEWR or contract rate on the regular payday for the work he performed in the workweek that started on October 22, 2015 when one or more of those same defendants did

not pay all those same wages based upon the *de facto* wage deduction that plaintiff Aguilera suffered when he was required to pay return expenses described in ¶¶127-28 above.

164.    One or more of the defendants breached their contract set forth in Plaintiff's Exhibit A attached with the named plaintiffs and the members of the class defined in ¶53 above to pay all wages due when those wages were due at the AEWR or contract rate on the first regular payday for the work performed by the named plaintiffs and the members of that same class when one or more of those same defendants did not comply with their contractual promise to comply with all applicable employment laws, including, but not limited to the NCWHA and those parts of their contract that set forth how they will reimburse for daily subsistence from the place of recruitment to Sampson County, North Carolina and return.

165.    As a result of the actions and omissions of the defendants, the named plaintiffs have suffered damages in the form of unpaid wages.

XVIII.  SIXTH CLAIM FOR RELIEF (FLSA wrongful discharge)

166.    Paragraphs 6 through 22, 60-79, and 114-134, inclusive, above are realleged and incorporated herein by reference by named plaintiff Aguilera against all defendants pursuant to 29 U.S.C. §§ 215(a)(3) and 216(b) of the Fair Labor Standards Act ("FLSA"), and the common law of wrongful discharge under the public policy of North Carolina.

167.    As alleged in ¶¶123-134 above, the defendants have unlawfully and wrongfully discharged and continue to discriminate and retaliate against plaintiff Aguilera because plaintiff Aguilera raised and pursued in good faith a complaint that the defendants' October 27, 2015 demand that he agree to allow the defendants to deduct anywhere from $200 to close to $500 per week from his wages was in violation of his right to receive wages

free and clear without any wage deduction that reduced his wages below the minimum rate prescribed by the FLSA and the NCWHA. for the payment of earned wages.

168. The defendants' discharge of and continuing discrimination and retaliation against plaintiff Aguilera was, are and continue to be in violation of the North Carolina public policy codified in N.C.Gen.Stat. § 95-25.1(b) of the NCWHA for the payment of earned wages.

169. The actions of the defendants that are complained of in this claim were taken and are being taken in willful and deliberate disregard of the plaintiff Aguilera's rights under 29 U.S.C. § 215(a)(3), and the public policy codified in N.C.Gen.Stat. § 95-25.1(b) with respect to payment of payment of earned wages.

170. The actions of the defendants that are complained of in this claim were taken and are being taken with willful intent to discourage and impede the plaintiff Aguilera's efforts to pursue the vindication of their rights under the NCWHA and the FLSA to payment of earned wages.

171. Plaintiff Aguilera is an indigent migrant agricultural workers who survives and support his family from paycheck to paycheck. The defendants' willful discharge of plaintiff Aguilera and continuing discrimination and retaliation against him in their refusal to re-hire plaintiff Aguilera was and is likely to cause serious harm to plaintiff Aguilera and his ability to support his family.

172. The defendants had available to it lawful procedures by which they could have recovered the value of their damaged property which they neglected to use starting from the first date that the plaintiff Aguilera accidentally damaged their property.

173.    The defendants were fully aware of the probable and substantial economic consequences of their willful conduct, and especially of the cruel and punitive way in which defendant Rodney terminated the plaintiff Aguilera's employment on October 27, 2015.

174.    The defendants are fully able to pay punitive damages, as evidenced by their revenues or net worth.

175.    As a result of the intentional, deliberate, and willful actions of all defendants that are described or referred to in ¶¶115-134 and 166-174, inclusive, above of this complaint, named plaintiff Aguilera has suffered damages, and he is entitled to payment of lost wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) for the wages that he has lost as a result of his wrongful discharge on or about October 27, 2015, compensation for the emotional distress and mental anguish that has suffered as a result of his wrongful discharge in an amount to be determined by a jury, and punitive damages in an amount to be determined by a jury.

XIX.    SEVENTH CLAIM FOR RELIEF (FLSA retaliatory discrimination)

176.    Paragraphs 6 through 22, 60-79, and 135-146, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs against all defendants pursuant to 29 U.S.C. §§ 215(a)(3) and 216(b) of the Fair Labor Standards Act ("FLSA").

177.    As alleged in ¶¶135-146 above, the defendants have unlawfully and wrongfully discriminated against and continue to unlawfully and wrongfully discriminate against all named Plaintiffs in their refusal to re-hire them under the H-2A program in 2016 because all named Plaintiffs raised and pursued in good faith by letter dated December 16, 2015 a complaint that the defendants' actions in the 2015 agricultural season in connection with their employment of the named Plaintiffs and their co-workers violated the FLSA and

NCWHA rights of those workers in the same way that was alleged in that December 16 letter, the original Complaint filed by the named Plaintiffs, and in this Amended Complaint.

178.     The defendants' discriminatory actions were and continue to be in violation 29 U.S.C. § 215(a)(3).

179.     The actions of the defendants that are complained of in this claim were taken and continue to be taken in willful and deliberate disregard of the named plaintiffs' rights under 29 U.S.C. § 215(a)(3).

180.     The actions of the defendants that are complained of in this claim were taken and continue to be taken with the willful intent to discourage and impede the named Plaintiffs' efforts to pursue the lawful remedy authorized by 29 U.S.C. § 216(b) and N.C.Gen.Stat. §§ 95-25.22(a) and 95-25.22(a1) for the violation of their rights under the NCWHA and the FLSA for the payment of earned wages at the minimum rate required by the FLSA and the NCWHA for their H-2A employment by the defendants in North Carolina in 2015.

181.     Each of the named Plaintiffs is an indigent migrant agricultural workers who survives and support his family from paycheck to paycheck.  The defendants' willful refusal to re-hire all of the named Plaintiffs was and is likely to cause serious harm to each of the named Plaintiffs and each Plaintiff's ability to support his family.

182.     The defendants had no lawful purpose for their refusal to re-hire the named Plaintiffs under the H-2A program for the 2016 agricultural season.

183.     The defendants were and are fully aware of the probable and substantial economic consequences of their willful conduct, and especially of the harassing and punitive way in which the defendants' authorized agent, Heather Register, threatened the named

Plaintiffs with no re-hire by the defendants under the H-2A program for the 2016 agricultural season in North Carolina.

184. The defendants are fully able to pay punitive damages, as evidenced by their revenues or net worth.

185. As a result of the intentional, deliberate, and willful actions of all defendants that are described or referred to in ¶¶135-146 and 176-184, inclusive, above of this complaint, all of the named plaintiffs have suffered damages, and are entitled to payment of:

(a) Lost wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) for the wages that all of the named Plaintiffs have lost as a result of the defendants' discriminatory and retaliatory refusal to re-hire all of the named Plaintiffs under the H-2A program for the 2016 agricultural and post-2016 agricultural seasons in North Carolina,

(b) Compensation for the emotional distress and mental anguish that all of the named Plaintiffs have suffered as a result of the defendants' discriminatory and retaliatory refusal to re-hire them for H-2A employment in North Carolina for the 2016 and post-2016 agricultural seasons in an amount to be determined by a jury, and

(c) Punitive damages in an amount to be determined by a jury.

XX. **EIGHTH CLAIM FOR RELIEF** (REDA retaliation and discrimination)

186. Paragraphs 6 through 22, 60-79, 82-94, and 135-146F, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs against all defendants pursuant to N.C.Gen.Stat. §§ 95-241 and 243 of the Retaliation and Discrimination Employment Act ("REDA"), N.C.Gen.Stat. §§ 95-240 et seq.

187. As alleged in ¶¶82-94 and 135-146A above, the defendants have unlawfully and wrongfully discriminated and retaliated against and continue to unlawfully and wrongfully discriminate and retaliate against all named Plaintiffs in their refusal to re-hire them under the H-2A program in 2016 because all named Plaintiffs raised and pursued in good faith by letter dated December 16, 2015 a complaint that the defendants' actions in the 2015 agricultural season in connection with their employment of the named Plaintiffs and their co-workers violated the NCWHA rights of those workers in the same way that was alleged in that December 16 letter and because plaintiff Aguilera-Hernandez refused to allow the defendants to make wage deductions in an amount that was illegal under N.C.Gen.Stat. §§ 95-25.8(b)(1) and 95-25.8(c) as alleged in the original Complaint filed by the named Plaintiffs, and in this Amended Complaint.

188. The defendants' discriminatory and retaliatory actions against all named plaintiffs that are described in ¶¶135-146 above were and continue to be in violation N.C.Gen.Stat. § 95-241(a)(1)b., 95-241(a)(2), and 95-241(a)(3).

189. The defendants' discriminatory and retaliatory actions against named plaintiff Mendiola-Bordes that are described in ¶¶82-94 and 135-146 above were and continue to be in violation N.C.Gen.Stat. § 95-241(a)(1)b., 95-241(a)(2), and 95-241(a)(3).

190. The actions of the defendants that are complained of in this claim were taken and continue to be taken in willful and deliberate disregard of the named plaintiffs' rights under N.C.Gen.Stat. § 95-241(a)(1)b., 95-241(a)(2), and 95-241(a)(3) within the meaning of N.C.Gen.Stat. 95-243(c).

191. The actions of the defendants that are complained of in this claim were taken and continue to be taken with the willful intent to discourage and impede the named

Plaintiffs' efforts to pursue the lawful remedy authorized by N.C.Gen.Stat. §§ 95-25.6, 95-25.13(1)-(2), 95-25-22(a), and 95-25.22(a1) for the violation of their rights under the NCWHA for the payment of promised wages when due at the rate that was disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) as required by the NCWHA for their H-2A employment by the defendants in North Carolina in 2014 and 2015.

192.    Each of the named Plaintiffs is an indigent migrant agricultural workers who survives and support his family from paycheck to paycheck.  The defendants' willful refusal to re-hire all of the named Plaintiffs was and is likely to cause serious harm to each of the named Plaintiffs and each Plaintiff's ability to support his family.

193.    Were it not for the substantial costs that have been advanced to Plaintiff Mendiola-Bordes, he would not have the funds required to file this action to resolve wage and employment dispute that could have been resolved, as a similar one was resolved in 2014, through the use of the FLOC CBA grievance procedure were it for the retaliatory and discriminatory decisions of the defendants that are described in ¶¶88 and 144 above of this complaint.

194.    The defendants had no lawful purpose for their refusal to re-hire the named Plaintiffs under the H-2A program for the 2016 agricultural season.

195.    The defendants had and have no lawful purpose for their refusal to renew their membership in the NCGA and to participate in the CBA that the NCGA has with FLOC as part of that NCGA membership.

196.    The defendants were and are fully aware of the probable and substantial economic consequences of their willful conduct, and especially of the harassing and punitive way in which the defendants' authorized agent, Heather Register, threatened the named

Plaintiffs with no re-hire by the defendants under the H-2A program for the 2016 agricultural season in North Carolina, the extraordinary expenses, cultural difficulties, and discouraging effect of the relatively cumbersome procedures available to litigate an international action like this one in federal court.

197.   As a result of the intentional, deliberate, and willful actions of all defendants that are described or referred to in ¶¶135-146A and 186-196, inclusive, above of this complaint, all of the named plaintiffs have suffered damages, and are entitled to payment of:

(a)   Lost wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) for the wages that all of the named Plaintiffs have lost as a result of the defendants' discriminatory and retaliatory refusal to re-hire all of the named Plaintiffs under the H-2A program for the 2016 agricultural and post-2016 agricultural seasons in North Carolina,

(b)   Plaintiff Mendiola-Bordes has suffered and will continue to suffer the damages and irreparable harm that are described in ¶¶146A and 196 above of this complaint.

198.   Pursuant to N.C.Gen.Stat. § 95-243(c), the amount of the economic damages described in ¶197 above should be trebled based upon the defendants' willful violation of the plaintiffs' REDA rights.

XXI.   CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

199.   Paragraphs 6 through 198, inclusive, above are realleged and incorporated herein by reference by the Plaintiffs against the defendants.

200.   The parties named in this action are in dispute as to their respective rights, privileges, obligations, and liabilities under the Fair Labor Standards Act, the North Carolina

Wage and Hour Act, REDA, the federal regulations pertaining to the employment of H-2A workers, the common law of contracts of North Carolina, and the public policy of North Carolina, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

201.    The defendants' discriminatory and retaliatory refusal to rehire plaintiff Aguilera is ongoing and causing him irreparable harm.   In and around the residence of plaintiff Aguilera in Veracruz, Mexico, there are no jobs available to him that will allow him to earn on a weekly basis what he was earning per day in his employment by the defendants in North Carolina in 2015.   Plaintiff Aguilera and his family will endure extreme hardship if plaintiff Aguilera cannot obtain employment with the defendants in 2016.   Therefore, plaintiff Aguilera requires equitable relief from this Court.

202.    The defendants' discriminatory and retaliatory refusal to rehire all named Plaintiffs other than Aguilera is also ongoing and causing them irreparable harm.   In and around the residence of each of the named Plaintiffs other than plaintiff Aguilera in Tlaxcala, Mexico and Veracruz, Mexico, there are no jobs available to them that will allow them to earn on a weekly basis what each of them was earning per day in their employment by the defendants in North Carolina in 2015.   The named Plaintiffs other than plaintiff Aguilera and their families will also endure extreme hardship, like plaintiff Aguilera and his family, if the named Plaintiffs other than plaintiff Aguilera cannot obtain employment with the defendants in 2016.   Therefore, all of the named Plaintiffs  other than Plaintiff Aguilera also require equitable relief from this Court.

203.    The defendants' discriminatory and retaliatory decisions that are described in ¶¶88 and 144 above of this complaint have caused and will continue to cause plaintiff

Mendiola-Bordes irreparable harm in his capacity to access an inexpensive, culturally-accessible, convenient, and relatively non-cumbersome dispute resolution mechanism that was, but for the defendants' discriminatory and retaliatory decisions, formerly available to plaintiff Mendiola-Bordes through the defendants' membership in the NCGA and the CBA that the NCGA had with FLOC.

WHEREFORE Plaintiffs respectfully requests that the Court:

(a)     Grant a jury trial on all issues so triable;

(b)     Declare the each of the named defendants has violated the rights of the Plaintiffs under North Carolina Wage and Hour Act, the Fair Labor Standards Act, the common law of contracts of North Carolina, and the public policy of North Carolina;

(c)     Pursuant to Rule 23(b)(3), Fed.R.Civ.P., and 29 U.S.C. § 216(b), certify, in the manner and to the extent requested in the Amended Complaint, the named plaintiffs as the representatives of the classes and collective action alleged in the Amended Complaint with respect to the First Claim for Relief, the Second Claim for Relief, the Third Claim for Relief, the Fourth Claim for Relief, and the Fifth Claim for Relief alleged in this Amended Complaint;

(d)     Enter judgment on the First Claim for Relief against each of the defendants, jointly and severally, and in favor of the Plaintiffs and each member of the class for compensatory damages plus an additional equal amount in liquidated damages equal to 100% of the amount of unpaid wages pursuant to 29 U.S.C. § 216(b) or alternatively for pre- and post-judgment interest at the full amount allowed by law;

(e)     Enter judgment on the Second Claim for Relief, Third Claim for Relief, and Fourth Claim for Relief against each of the defendants, jointly and severally, and in favor of

the Plaintiffs and each member of the class for unpaid back wages, plus an additional amount in liquidated damages equal to 100% of the amount of unpaid wages pursuant to N.C.Gen.Stat. §§ 95-25.22(a) and 95-25.22(a1) of the North Carolina Wage and Hour Act, plus any pre-judgment or post-judgment interest that may be allowed by law;

(f)     Enter judgment on the Fifth Claim for Relief against each of the defendants, jointly and severally, and in favor of the Plaintiffs for compensatory damages equal in amount to unpaid back wages or other unpaid amounts due pursuant to the terms of the contract set forth in Plaintiff's Exhibit A attached plus any pre- and post-judgment interest at the full amount allowed by law;

(g)     Enter judgment on the Sixth Claim for Relief against each of the defendants, jointly and severally, and in favor of named plaintiff Aguilera for the lost back wages that he has suffered as a result of his wrongful discharge on or about October 27, 2015, plus an equal additional amount in liquidated damages pursuant to 29 U.S.C. § 216(b), plus monetary damages as compensation for the emotional distress and mental anguish that has suffered as a result of his wrongful discharge in an amount to be determined by a jury, and punitive damages in an amount to be determined by a jury pursuant to 29 U.S.C. § 215(a)(3) and the common law of wrongful discharge in violation of public policy under the common law of the State of North Carolina, plus pre- and post-judgment interest at the full amount allowed by law under the Sixth Claim for Relief;

(h)     Enter judgment on the Seventh Claim for Relief against each of the defendants, jointly and severally, and in favor of each of the named Plaintiffs for the lost back wages that each of them has suffered as a result of the defendants' discriminatory and retaliatory refusal to re-hire them under the H-2A program for the 2016 and post-2016

agricultural seasons in North Carolina, plus an equal additional amount in liquidated damages pursuant to 29 U.S.C. § 216(b), plus monetary damages as compensation for the emotional distress and mental anguish that each of the named plaintiffs has suffered as a result of the defendants' discriminatory and retaliatory refusal to re-hire them under the H-2A program in an amount to be determined by a jury, and punitive damages in an amount to be determined by a jury pursuant to 29 U.S.C. § 215(a)(3), plus pre- and post-judgment interest at the full amount allowed by law under the Seventh Claim for Relief;

(i)     Enter judgment on the Eighth Claim for Relief against each of the defendants, jointly and severally, and in favor of named plaintiff Aguilera for the lost back wages that he has suffered as a result of his wrongful discharge on or about October 27, 2015, trebled pursuant to N.C.Gen.Stat. § 243(c); plus pre- and post-judgment interest at the full amount allowed by law under the Eighth Claim for Relief;

(j)     Enter judgment on the Eighth Claim for Relief against each of the defendants, jointly and severally, and in favor of each of the named Plaintiffs for the lost back wages that each of them has suffered as a result of the defendants' discriminatory and retaliatory refusal to re-hire them under the H-2A program for the 2016 and post-2016 agricultural seasons in North Carolina, trebled pursuant to N.C.Gen.Stat. § 243(c), plus pre- and post-judgment interest at the full amount allowed by law under the Eighth Claim for Relief;

(k)     Enter judgment against each of the defendants, jointly and severally, and in favor of all named plaintiffs for costs and a reasonable attorney's fee pursuant to N.C.Gen.Stat. § 95-25.22(d), 29 U.S.C. § 216(b), N.C.Gen.Stat. § 95-243(c), and N.C.Gen.Stat. § 6-20;

(l)     Pursuant to 29 U.S.C. §§ 216(b), grant an injunction against each of the defendants, jointly and severally, to require them to take the necessary action to employ all of the named Plaintiffs under the H-2A program in 2016 and years thereafter pursuant to the terms of applicable H-2A federal regulations then applicable for the contract period specified in Plaintiff's Exhibit B attached for the same type of work described in Plaintiff's Exhibit B attached;

(m)     Pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-243(c)(1)-(3), grant an injunction against each of the defendants, jointly and severally, to require them to take the necessary action to renew their membership in the NCGA and the NCGA's CBA with FLOC in connection with its employment of plaintiff Mendiola-Bordes and his fellow H-2A workers under the H-2A program in 2016 and years thereafter for the same type of work described in Plaintiff's Exhibit B attached;

(n)     Award such other relief as may be just and proper in this action.

This the 29th day of September 2016.

Law Office of Robert J. Willis, P.A.

By:/s/Robert J. Willis
Robert J. Willis, Esq.
Attorney at Law
NC Bar #10730
(mailing address)
P.O. Box 1269
Raleigh, NC 27602
tel: (919) 821-9031
fax: (919)821-1763
rwillis@rjwillis-law.coom

(street address)
5. W. Hargett Street
Suite 404
Raleigh, NC 27601

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Paul H. Derrick, Esq., [pderrick@fmglaw.com](mailto:pderrick@fmglaw.com).

This the 29th day of September, 2016.

/s/ Robert J. Willis
Robert J. Willis, Esq.
N.C. Bar No.: 10730